```
                  UNITED STATES DISTRICT COURT

                   DISTRICT OF NEW HAMPSHIRE
```

United States of America,

    v.                                          Case No. 15-cr-174-SM
                                              Opinion No. 2025 DNH 115

Mara Morillo,
      Petitioner

## **O R D E R**

Mara Morillo is a citizen of Venezuela. Pursuant to a plea agreement negotiated with the government, Morillo pled guilty to one count of conspiracy to distribute, and possess with intent to distribute, controlled substances. She was sentenced to serve 84 months in prison. Morillo completed her term of incarceration and was released by the Bureau of Prisons. Subsequently, however, she was taken into custody by Immigration and Customs Enforcement and is currently being detained. A final order for her removal has issued and her deportation is imminent. Morillo moved this court to stay her deportation while she challenged the basis for it – her felony drug conviction. That motion was denied as the court found that it was without jurisdiction to grant it.

Pending before the court is Morillo's Petition for Writ of Coram Nobis. In it, she moves the court to vacate her felony drug conviction on grounds that she received ineffective assistance of counsel during plea negotiations. The court held an expedited evidentiary hearing on September 25, 2025, by agreement. For reasons the court will explain more fully in a subsequent written opinion, Morillo's petition is granted and her felony drug conviction vacated. The prejudice defendant faces (deportation to Venezuela) arising from the ineffective representation she received is both severe and imminent; thus, expedited resolution is warranted.

In short, the court concludes that Morillo has proved the three essential elements necessary to obtain Coram Nobis relief: (1) she has plausibly explained her failure to seek relief from her conviction earlier; (2) she has shown that she continues to suffer significant collateral consequences from her conviction (it is the sole basis for her imminent deportation and the sole obstacle to her ability to seek legal permanent residency, applications for which are pending); and (3) she has shown that her conviction resulted from an error of the most fundamental character: ineffective assistance of counsel. See, e.g.,

Strickland v. Washington, 466 U.S. 668, 687 (1984); Murray v. United States, 704 F.3d 23, 29-30 (1st Cir. 2013); United States v. George, 676 F.3d 249, 254 (1st Cir. 2012).

As to the latter element, Morillo has shown that she received constitutionally deficient representation in that counsel failed to correctly advise her that if she were to accept the government's plea offer, her guilty plea would render her immediately and mandatorily deportable, to a virtual certainty, and that no exception applied to her case.

Evidence presented at the hearing (in the form of Morillo's affidavit) tends to show that counsel affirmatively mis-advised Morillo, assuring her that her conviction would not necessarily result in deportation.  Additionally, Morillo's claimed understanding is consistent with the testimony of witnesses who testified at the evidentiary hearing that Morillo always spoke of addressing her immigration status and getting a green card once she was released from prison, anticipating that when her American citizen daughter reached the age of 21, she would sponsor Morillo's application for citizenship.  Under such

circumstances, the Supreme Court has concluded that counsel rendered constitutionally deficient representation.

> Padilla's counsel provided him false assurance that his conviction would not result in his removal from this country. This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect.

Padilla v. Kentucky, 559 U.S. 356, 368-69 (2010).

Defense counsel understandably had no present recollection of either Morillo or the facts related to her plea. All he could describe was his general practice with respect to advising clients about immigration consequences following a guilty plea. But, even assuming counsel followed his described typical practice and discussed the immigration consequences of Morillo's plea with her, still, the record does not support a conclusion that he correctly told her that her conviction would certainly, mandatorily lead to her deportation. It is just as likely that counsel warned her that her plea "might" prompt her deportation, or likely would, or predictably would, or usually does. Indeed that probably explains Morillo's steadfast recollection that he told her that her conviction would not prompt automatic deportation (and is consistent with other witnesses' testimony about her resolute plans throughout her incarceration and since

4

her release from prison to obtain legal status), and perhaps also explains her understanding and affirmative answer during the plea colloquy when asked if she understood that she could potentially be deported. No doubt, had the court advised her that she certainly, mandatorily would be deported, her response would have been different.

Finally, even if the court assumes that counsel correctly explained to Morillo that she would be deported as a consequence of her guilty plea (which the court does not find), there is no evidence that counsel told her that the subsequent formal statements inconsistent with that reality were wrong. Indeed, counsel testified that it was not his normal practice to correct such statements.

Defendant's guilty plea rendered her mandatorily deportable pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) and permanently inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II). See Padilla, 559 U.S. at 360 and 368 (describing 8 U.S.C. § 1227(a)(2)(B)(i) as making an alien convicted of certain drug offense subject to "automatic deportation" and stating that the statute "commands removal").

5

In <u>Padilla</u>, the Supreme Court explained that:

> When the law is not succinct and straightforward, . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges <u>may carry a risk</u> of adverse immigration consequences. But <u>when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear</u>.

<u>Padilla</u>, 559 U.S. at 369 (emphasis supplied).

I find that defendant was given mis-advice with respect to the certain immigration consequences of her plea by the government and the court. The plea agreement incorrectly, in writing, advised defendant in equivocal terms, that immigration consequences could or may include deportation. The court, during the Rule 11 plea colloquy, used similar language, incorrectly conveying that deportation was not a mandatory, certain consequence of her plea, but merely a possibility. Defense counsel was asked at the plea colloquy if he had reviewed each paragraph of the agreement with the defendant, and he confirmed that he had done so. Defense counsel was also present and in consultation with defendant when the court provided incorrect advice to defendant regarding the immigration consequences of her plea. While defense counsel may well not have had any professional responsibility to inform the

6

government of the error in the written plea agreement, or this court of the error in its Rule 11 questioning, counsel, of course, was obligated to advise the defendant that neither the immigration consequence representations in the written agreement, nor those made by the court during the colloquy were correct, and that she must understand that deportation was indeed not a mere possibility or even a likelihood or predictable, but was a mandatory certainty.  See Padilla, 559 U.S. at 360.

There is no evidence suggesting that counsel ever provided such clarification to defendant before she pled guilty, or at anytime thereafter.  Obviously, the mis-advice in the plea agreement and given during the colloquy was entirely consistent with defendant's asserted view that she might work out her immigration issues after serving her sentence and she had a reasonable expectation of being able to arrange to remain, even attaining United States citizenship, given the advice she got, and her cooperation with the government in the criminal case.

### Conclusion

The writ of coram nobis is a rarely granted, extraordinary remedy.  But "rarely" is not a synonym for "never."  It is available under limited and compelling circumstances to correct

7

fundamental errors that occurred in a criminal case, with a significant emphasis on achieving justice.  This case presents one of those rare circumstances in which issuance of the writ is warranted.  The very prejudice defendant sought to avoid was rendered mandatory by her plea, a plea she would not have offered had she been correctly advised of its mandatory consequences.  Defendant also alludes to counsel's failure to explore a possible "battered woman" defense.  She has not presented evidence sufficient to show a deficiency of counsel in that respect, but the evidence she has presented fairly shows that, had she been correctly advised about the immigration consequences of her plea, she could have gone to trial and had a plausible defense to offer, divorced from the government's evidence related to the elements of the offense charged.

    At stake in this litigation is Morillo's fundamental constitutional right to effective assistance of counsel, as well as her ability to remain with her children in this country, pursue lawful status, and avoid removal to a dangerous and uncertain future in Venezuela.  Morillo is entitled to the conclusion (and the court so finds) that her unwavering and absolutely certain recollection of the events in question is more accurate than her counsel's lack of any specific recollection at all (and the government's suggestion that

8

counsel's "typical practice" was, in this specific case, adequate to meet the very exacting requirements of Padilla).

Finally, and perhaps most fundamentally, it is plain that counsel did not advise Morillo that deportation advice by the court and in the plea agreement was wrong and misleading – that there was no possibility that she would be allowed to remain in the country and pursue legal residency. That failure to ensure that Morillo fully and correctly understood the consequences of her guilty plea before offering it amounted to constitutionally deficient representation. Counsel failed to provide adequate representation with respect to a material matter of great importance to defendant, and she is suffering material prejudice as a result.

Morillo's unopposed Emergency Motion to Expedite Order of Vacatur (**document no. 273**) is granted. For the forgoing reasons, as well as those set forth in a Morillo's legal memoranda (document no. 272), the Petition for Writ of Coram Nobis (**document no. 260**) is granted and Morillo's conviction in United States v. Morillo, no. 15-cr-174-SM-AJ-1, (document no. 207, May 11, 2017) is vacated.

9

Because Morillo's deportation is "imminent," the court has determined that this order must issue immediately. A more detailed opinion explaining the court's legal reasoning will follow in due course.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 26, 2025

cc: Counsel of Record